IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| RONALD HENEGHAN, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 09-04979 |
| | : | |
| NORTHAMPTON COMMUNITY | : | |
| COLLEGE, et al, | : | |
| Defendants | : | |

**M E M O R A N D U M**

**STENGEL, J.** July 7, 2010

Ronald Heneghan, formerly a Professor of Theatre at Northampton Community College, alleges that the College and two of its employees violated his constitutional rights in violation of 42 U.S.C. § 1983. He claims he was denied procedural due process when the College revoked his tenured status and terminated his employment without notice and a hearing, and that he was discriminated against on the basis of his gender. The defendants have filed a motion to dismiss his complaint. For the reasons set forth below, I will grant the motion in part and deny it in part.

**I. FACTUAL BACKGROUND** [1]

Ronald Heneghan began employment at Northampton Community College ("NCC") on August 20, 2003 in a tenure-track position as Associate Professor of Theatre.

---

[1] The following facts adopted from the plaintiff's complaint are accepted as true.

1

Pl.'s Am. Compl. ¶¶ 8, 9. Julie Beetem was hired as a faculty member in the Theatre Department at NCC in January of 2006. Id. ¶ 11. Problems between Beetem and Heneghan and Beetem and other men in the Theater Department began shortly thereafter. Id. ¶ 12. Heneghan claims that, beginning in 2007, Beetem "began a course of conduct aimed at having [him] removed from his position." Id. ¶ 17. Heneghan claims Beetem made threatening comments to him, was openly hostile to males, especially Heneghan, working in the Theater Department, opposed NCC's hiring more men in the department, and blamed Heneghan for incidents that were her own fault. Id. ¶¶ 14, 19, 20, 23, 25, 26, 31. He also complained she excluded him, but not a woman, from department decisions and processes. Id. ¶ 32.

Heneghan alleges he "made complaints to Dr. Elizabeth Bugaighis about the sexually discriminatory actions by Beetem, but no action was taken to stop her," that he "made NCC administration aware of these threats by Beetem, specifically to [sic] Dr. Bugaighis," and that he "made a complaint to Bugaighis by letter of March 5, 2008 that Beetem was attempting to undermine him." Id. ¶ 18, 21, 24.

On March 5, 2009, Heneghan was granted tenure at NCC by decision of the college's Board of Directors. Pl.'s Am. Compl. ¶ 34. He claims that when Beetem discovered he had been granted tenure, she immediately engaged in a series of hostile acts with the goal of having Heneghan's tenure revoked. Id. ¶ 35. Her actions included making false statements to Dr. Bugaighis, Dean of Humanities, that Heneghan had

sexually harassed a student and provided beer to underage students. Id. ¶ 36. As a result of these accusations, Heneghan's tenure was revoked on March 13, 2009, by Ms. Bugaighis and Helene Whitaker, NCC's Vice President of Administrative Affairs. Id. ¶ 38. Heneghan claims his tenure was revoked "without any hearing or other process afforded to tenured faculty." Id. He also claimed that, at the time of his tenure revocation, Bugaighis "knew that Beetem had been making false allegations against Heneghan for several years, and the [sic] Beetem was seeking to have Heneghan terminated." Id. ¶ 40. After receiving notice of his tenure revocation, Heneghan "sought to commence a grievance with the Union demanding that his tenure and employment be reinstated." Id. ¶ 41. He does not set forth in his complaint the results of that effort.

Heneghan filed a complaint in this Court on October 29, 2009. He filed an amended complaint on January 19, 2010, against Northampton Community College, Dr. Bugaighis, and Dr. Whitaker. His amended complaint contains one count alleging defendants violated 42 U.S.C. §1983 by terminating him from his position on the basis of sex and by depriving him of his constitutionally protected right to tenured public employment.[2] Defendants filed a motion to dismiss Heneghan's amended complaint on February 8, 2010, and he filed a response on February 24, 2010.

---

[2] As noted herein, Heneghan claims specifically that he was denied procedural due process before being deprived of his property interest in continued public employment.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all plausible inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

It remains true that the Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim. Rather, the Rules require "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In recent rulings, however, the Supreme Court has rejected language in Conley stating that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Twombly, 550 U.S. at 561. Rather, a "complaint must allege facts suggestive of [the proscribed] conduct," Twombly, 550 U.S. at 564, and it must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting

Twombly, 550 U.S. at 556). Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern Pennsylvania Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995).

In assessing the merits of a motion to dismiss, courts must be careful to recognize that, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal 129 S.Ct. 1937, 1949 (2009). "[O]nly a complaint that states a *plausible* claim for relief survives a motion to dismiss." Id. at 1950 (emphasis added). In recognition of these principles, courts must first identify those allegations in a complaint that are mere conclusions and are therefore not entitled to the assumption of truth, and next, consider whether the complaint's factual allegations, which *are* entitled to a presumption of truth, plausibly suggest an entitlement to relief. Iqbal, 129 S.Ct. at 1950 (emphasis added).

## III. DISCUSSION

### A. Consideration of Collective Bargaining Agreement

As a preliminary matter, this court must determine whether it can consider the copy of the Collective Bargaining Agreement attached as Exhibit A to defendants' motion to dismiss.

In ruling on a motion to dismiss, courts generally consider only the allegations

contained in the complaint, any exhibits attached to the complaint, and matters of public record. City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 259 (3d Cir.1998). However, a plaintiff's failure to attach to the complaint or cite documents that are integral to or relied on in the complaint does not preclude the court from relying on such documents in considering a motion to dismiss. In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1426 (3d Cir. 1997)("a court may consider a document that is 'integral to or explicitly relied upon in the complaint' without converting the motion to dismiss into one for summary judgment").

Because Heneghan does not explicitly rely on the Collective Bargaining Agreement in his complaint, the agreement is not integral to his complaint, and the copy of the agreement attached to defendant's motion is incomplete,[3] I will decide the instant motion to dismiss based on the allegations in Heneghan's complaint alone.

### B. Section 1983 Claims

Section 1983 imposes civil liability upon a person who, acting under color of state law, deprives another person of any rights, privileges or immunities secured by the

---

[3] The copy of the Collective Bargaining Agreement attached to defendant's motion to dismiss contains every section listed in the Table of Contents except the section entitled "Just Cause." Without knowing what that portion of the agreement states and whether it addresses specific issues raised in this motion—namely, whether Mr. Heneghan achieved the status of tenured professor and what his rights would have been following a termination from that position—relying on the incomplete agreement to determine the extent of Mr. Heneghan's rights would be improper, especially in light of settled practice that courts rely only on the allegations of the complaint, exhibits attached thereto, and matters of public record.

Constitution or laws of the United States. 42 U.S.C. § 1983; Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000). "To state a claim under § 1983, a plaintiff must show that the defendant, through conduct sanctioned under the color of state law, deprived her of a federal constitutional or statutory right." Gruenke, 225 F.3d at 298 (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 907 (3d Cir.1997)). Defendants seek dismissal of Heneghan's complaint on the ground that (1) Heneghan had no property right in his position entitling him to substantive or procedural due process;[4] (2) Heneghan states no cause of action supporting his claim of sex discrimination in violation of Section 1983; (3) Heneghan states no First Amendment claim; and (4) Heneghan does not set forth sufficient facts to support a claim for punitive damages.

Heneghan claims NCC is funded primarily with public funds and is a political subdivision of the County of Northampton, Complaint ¶ 2, and that Dr. Bugaighis and Dr. Whitaker were acting in their official and individual capacities when they terminated Heneghan's employment, id. ¶¶ 3-4. Defendants do not claim Heneghan has failed to allege that all defendants are persons acting under color of law for purposes of Section 1983.

---

[4] Defendants also assert that Plaintiff cannot establish a liberty interest protected by due process. Because Heneghan admits in his response to defendants' motion that he asserts only a property interest in his employment ("Defendants . . . make the mistake of assuming that this is a procedural due process claim based on a liberty interest. Rather, once Plaintiff demonstrates a property interest, he has a substantive due process claim." Pl.'s Resp. to Def.'s Motion to Dismiss at 8 (emphasis in original)), the Court will assume that he has asserted no such liberty interest and intends only to pursue a claim based on failure to provide procedural due process prior to deprivation of a property interest, i.e. continued public employment with NCC.

7

1. **Due Process Claim**

Heneghan alleges he had a "constitutionally protected right to tenured public employment." Complaint at ¶ 43. While he has no such substantive due process right, he does have a procedural due process right entitling him to notice and a hearing before his tenured status can be revoked.

The Fourteenth Amendment to the United States Constitution prohibits deprivations "of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 140-43 (3d Cir. 2000), sets forth the distinction between substantive due process rights and procedural due process rights. In essence, the former are "fundamental" under the constitution, and are limited, while the latter are state-created. See id. Because tenured public employment is not guaranteed in the Constitution, there is no substantive due process right to such employment. Nicholas, 227 F.3d at 142.

However, if a plaintiff asserts individual life, liberty, or property interests, states are required to ensure that certain procedural safeguards are in place before a person is deprived of those interests. Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000). Those procedural safeguards generally consist of notice and an opportunity to be heard before a deprivation occurs. Id. at 121 (citing McDaniels v. Flick, 59 F.3d 446, 456 (3d Cir.1995)). To have a property right in public employment protected by procedural due

process, "a person must have more than a unilateral expectation of continued employment[.]" Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005). He must instead have "a legitimate entitlement to such continued employment." Id. (citing Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

The Supreme Court has recognized that public college and university professors dismissed from office while under tenure have a legitimate entitlement to their employment that is subject to the mandates of procedural due process. See Roth, 408 U.S. at 576 (citing Slochower v. Bd. of Higher Educ., 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956)); see also Gilbert v. Homar 520 U.S. 924, 928-29, 117 S.Ct. 1807, 138 L. Ed. 2d 120 (1997) ("[P]ublic employees who can be discharged only for cause have a constitutionally protected property interest in their tenure and cannot be fired without due process."). Although this legitimate entitlement may normally arise out of general tenure provisions or the terms of a contract, in the absence of either one, an employee may nonetheless have "a clearly implied promise of continued employment." Roth, 408 U.S. at 577 (citing Connell v. Higginbotham, 403 U.S. 207, 208, 91 S.Ct. 1772, 1773, 29 L.Ed.2d 418 (1971)).

Defendants argue Heneghan did not actually achieve tenured status as a result of the NCC Board's March 5, 2009 vote. They state that, "Plaintiff was never guaranteed . . . continued employment prior to the Northampton Community College's decision not offer [sic] and/or allegedly revoke tenure on March 13, 2009." See Def's Motion to Dismiss at

9

6. They do not appear to dispute that if Heneghan had achieved tenured status as a result of NCC's March 5, 2009 vote granting him tenure, he would have a procedural due process right in continued employment at NCC which mandated notice and a hearing before termination of his employment there. They argue that Heneghan never achieved tenured status which could even be revoked following the March 5, 2009, vote, pointing out that Heneghan never had a contract guaranteeing him indefinite appointment. See Def's Motion to Dismiss at 6.

Heneghan, on the other hand, claims that an issue of fact remains whether the Board's March 5, 2009 vote effectively and automatically granted him either tenured status or a legitimate expectation of continued appointment. See Pl.'s Resp. to Def.'s Motion to Dismiss at 8. I believe he presents the better argument. Viewing the facts alleged in the complaint in his favor, it would be inappropriate to find as a matter of law that Heneghan had no property interest in continued public employment with NCC. Heneghan alleges that the NCC Board's March 5, 2009 vote granted him tenure. It is plausible that, even without a formal employment contract or some other official notice that he had achieved tenured status following the vote, Heneghan had a legitimate expectation of continued employment after he was notified of the Board's vote granting him tenure. Without more facts concerning the procedures followed after such a vote, the rights afforded tenured faculty, and Heneghan's actions following the revocation of his tenure, I will not grant defendants' motion to dismiss Heneghan's procedural due process

claim.

### 2. Sex Discrimination Claim

Defendants also seek dismissal of Heneghan's Section 1983 sex discrimination claim. They argue Heneghan failed to set forth sufficient facts in his complaint to allege discrimination based on his sex.

Mr. Heneghan's sex discrimination count consists of one paragraph asserted against all defendants - NCC, Ms. Bugaighis, and Ms. Whitaker. Paragraph 43 of his complaint states:

> The Defendants acted in concert with each other under color of law, and violated the rights of the Plaintiff by depriving him of his constitutionally protected right to tenured public employment as guaranteed by the First and Fourteenth Amendments to the United States Constitution, in that Plaintiff was terminated from his position based upon his sex.

Pl.'s Am. Compl. ¶ 43. Heneghan claims Bugaighis and Whitaker were each "acting in [their] official and individual [capacities]." Id. ¶¶ 3, 4.

Plaintiffs alleging discrimination on the basis of sex in a Section 1983 complaint normally assert such claims under the Equal Protection Clause of the Fourteenth Amendment, which provides that, "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Although Heneghan fails to specify on which portion of the Fourteenth Amendment he asserts his gender discrimination claim, I will construe his allegation that he was denied Fourteenth

Amendment rights "in that he was terminated from his position based upon his sex" as a claim that he was discriminated against on the basis of his sex in violation of the Equal Protection Clause.

In order to prevail on a Section 1983 equal protection claim, a plaintiff must show that he was "subjected to purposeful discrimination" because of his sex. Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d Cir. 1997) *overruled in part on other grounds by* Burlington N. & Sante Fe. Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). A plaintiff alleging gender-based discrimination must demonstrate that he was treated differently from other individuals similarly situated and that this disparate treatment was based upon his gender. Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990); Keenan v. City of Philadelphia, 983 F.2d 459, 465 (3d Cir. 1992).

### a. Gender Discrimination Claim against NCC

Municipal entities cannot be held liable under Section 1983 for the actions of employees based on a theory of respondeat superior or vicarious liability. See Monell v. New York City Dept. of Soc. Serv., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); see also Natale v. Camden County Correctional Facility, 318 F.3d 575 (3d Cir. 2003). Instead, liability is imposed when the municipal entity, "under color of some official policy, 'causes' an employee to violate another's constitutional rights." Id. The

plaintiff must establish: (1) the municipality had a policy[5] or custom[6] that deprived him of his constitutional rights; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) his injury was caused by the identified policy or custom. Bd. of the County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403–04 (1997) (citing, *inter alia*, Monell, 436 U.S. at 690–91, 694). Colleges operated under municipal authority are persons within the meaning of Section 1983. West v. Williamsport Area Cmty. Coll., 492 F.Supp. 90, 98 (M.D.Pa. 1980).

Heneghan has failed to allege facts sufficient to support a claim against NCC for Section 1983 municipal liability. His complaint asserts that one individual, Julie Beetem, was responsible for harassing and discriminating against him and that he informed a supervisor, Dr. Bugaighis, about Ms. Beetem's behavior. He claims Dr. Bugaighis failed to act to stop the discriminatory behavior despite being informed of it. Although he

---

[5] A municipal policy, for purposes of § 1983, is a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a government] body's officers." Monell, 436 U.S. at 690; see also Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000) ("Policy is made when a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict.") (citation omitted). Such a policy "generally implies a course of action consciously chosen from among various alternatives." City of Okla. City v. Tuttle, 471 U.S. 808, 823 (1985).

[6] The absence of a policy does not thereby relieve a municipality of liability. Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir. 1990). A custom, while not formally adopted by the municipality, may lead to liability if the "relevant practice is so widespread as to have the force of law." Bryan County, 520 U.S. at 404; see also Bielevicz, 915 F.2d at 851 (stating that a constitutionally deficient custom may be found to exist when "policymakers were aware of [similar] unlawful conduct in the past, but failed to take precautions against future violations"). This requirement should not be construed so broadly as to circumvent Monell: "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy..." Tuttle, 471 U.S. at 823–824.

argues the facts contained in his complaint set forth "a detailed pattern of sex discrimination against men in the Theatre Department at NCC which was set in motion by Beetem," he does not even attempt to argue that NCC had a policy or widespread practice of engaging in such discrimination. He does not allege it was NCC policy to exclude men from or harass men in the Theatre Department, or that it was widespread practice to do so. Heneghan alleges essentially that one person with a vendetta against him engaged in a series of hostile acts against him because of his sex. An allegation that one individual engaged in discriminatory acts is simply insufficient to support a claim for municipal liability. See Monell, 436 U.S. at 691; Tuttle, 471 U.S. at 823–824.

A municipality can also be held liable under Section 1983 when an individual "has policy making authority rendering his or her behavior an act of official government policy." McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). Only those municipal officers and employees who have final policymaking authority can by their actions subject their municipal employers to Section 1983 liability. Pembaur, 475 U.S. at 479-80, 106 S.Ct. 1292. Whether a particular official has final policy-making authority is a question of state law. Id. at 483. In order to hold a municipality liable for the actions of policy-making individuals, the challenged action must have been taken pursuant to a policy adopted by the official responsible for making policy in that area. Id. at 482-83 and n. 12.

Heneghan does not allege facts to support a Section 1983 claim against NCC based on actions of Bugaighis or Whitaker taken in their official capacity, because he does not allege that either one had any policy-making authority in their respective positions at NCC or that they developed a policy or custom of discriminating against men in NCC's theatre department.

Therefore, I will grant defendants' motion to dismiss Heneghan's Section 1983 claim for discrimination on the basis of sex against defendant NCC.

### b. Gender Discrimination Claims Against Bugaighis and Whitaker

In order to impose individual supervisory liability under Section 1983, "there must be some affirmative conduct by the supervisor that played a role in the discrimination." Andrews, 895 F.2d at 1478. The affirmative conduct can be shown through "allegations of personal direction or of actual knowledge and acquiescence or through proof of direct discrimination by the supervisor. Id. (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)); see also Robinson, 120 F.3d at 2193. Any allegations concerning the "existence of an order or acquiescence leading to discrimination must be pled and proven with appropriate specificity." Andrews, 895 F.2d at 1478.

Viewing the facts in the light most favorable to Heneghan, it would be inappropriate at this stage to dismiss his Section 1983 gender discrimination claim against Bugaighis. Heneghan alleges that Ms. Beetem discriminated against him by making false

15

allegations against him and treating him in a hostile manner. Complaint ¶¶ 14, 36. He claims she treated him differently than females in the department by excluding him from department decision-making while including a woman, Janice Wolf, and that she advocated for the hiring of a female candidate with no teaching experience. Id. ¶¶ 28, 32. While these factual allegations are certainly do not establish that Beetem treated Heneghan differently than other females similarly situated, it is plausible that discovery could reveal the existence of evidence in support of this fact. Heneghan also alleged in his complaint that he approached Bugaighis numerous times about the discriminatory behavior directed at him by Beetem, and voiced his concerns by letter in March of 2008. Id. ¶¶ 18, 24, 40. This allegation—that Bugaighis was aware of sexually discriminatory behavior on the part of a professor she supervised and failed to stop it—if proven, would be sufficient to impose individual supervisory liability under section 1983.

However, because Heneghan does not claim he made Whitaker aware of Beetem's alleged discriminatory behavior or that she acquiesced in it, I will grant the motion to dismiss with respect to Heneghan's individual Section 1983 claim against Whitaker. Allegations concerning the existence of acquiescence must be pleaded and proven with "appropriate specificity," and Heneghan has not met this standard. In fact, the only specific claim against Whitaker contained in Heneghan's complaint avers that she, along with Bugaighis, took action to revoke Heneghan's tenure without the hearing or other process afforded to tenured faculty. This procedural due process claim is distinct from

Heneghan's sexual discrimination claim. Although Heneghan's complaint also alleges that the defendants "acted in concert with each other under color of law," this statement is simply too vague and conclusory to support a Section 1983 claim against Whitaker.

### 3. First Amendment Claim

I have construed Heneghan's complaint to allege causes of action for violation of his procedural due process rights and for gender discrimination. Heneghan's complaint phrases both his due process and gender discrimination claims as depriving him of rights "guaranteed by the First and Fourteenth Amendments to the United States Constitution." Pl.'s Am. Compl., ¶¶ 43, 44. Although in his response to NCC's motion to dismiss, Heneghan characterizes his complaint as one that he was "retaliated against for speaking out about Beetem's numerous instances of prior misconduct," Pl.'s Resp. To Def.'s Mot. To Dismiss, 10, this assertion appears nowhere in his complaint. The factual averments in Heneghan's complaint simply do not support a First Amendment retaliation claim, and any reliance on the protections of the First Amendment is vague.

I will therefore grant NCC's motion to dismiss Heneghan's purported First Amendment claim.

### 4. Demand for Punitive Damages

Finally, Heneghan seeks "punitive damages which are justified by the outlandish

and outrageous conduct, actions, and omissions of one or more of the Defendants as aforesaid." Defendants contend that punitive damages are not available from any defendant. Heneghan concedes that, because NCC is a local agency, it is immune from any award of punitive damages. See Pl.'s Resp. to Def.'s Motion to Dismiss, 10; City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Similarly, punitive damages are not available against the individual defendants, Bugaighis and Whitaker, in their official capacities, since those suits are in actuality suits against the municipality. Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

However, Heneghan claims he can maintain an action for punitive damages against Defendants Bugaighis and Whitaker in their individual capacities. Punitive damages are available against individual defendants in Section 1983 actions where they have acted with "reckless or callous disregard of, or indifference to, the rights and safety of others." Keenan, 983 F.2d at 469-70 (citing Bennis v. Gable, 823 F.2d 723, 734 (3d Cir.1987)). Punitive damages awards for Section 1983 violations are only awarded in special circumstances, that is, in those cases "in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief." Id. (quoting Conchetti v. Desmond, 572 F.2d 102, 105-06 (3d Cir. 1978)).

Heneghan fails to allege facts against Bugaighis supporting an award of punitive damages. Heneghan claims he told Bugaighis once about sexually discriminatory actions

on the part of Beetem, Complaint ¶ 18, and that he told her by letter than Beetem was "attempting to undermine him," id. ¶ 24.  However, the substance of Heneghan's complaints to Bugaighis, as set forth in his complaint, did not sound of outrageous discrimination or harassment but rather appeared to be a personal conflict.  Although these allegations, if proven, may show that Bugaighis failed to respond appropriately to Beetem's behavior, there are no facts suggesting that her failure to respond was anything more than a bare violation of Heneghan's rights and was instead reckless conduct justifying an award of punitive damages.

Heneghan also seeks punitive damages from Whitaker.  For the same reason I will dismiss Heneghan's discrimination claim against Whitaker, I will dismiss his punitive damages claim against her.  There is simply nothing in Heneghan's complaint to suggest that Whitaker was aware, as Bugaighis was, of Beetem's discriminatory behavior against Heneghan.  Without knowledge of Heneghan's complaints, Whitaker cannot be found in reckless disregard of his rights.

## IV. CONCLUSION

Because the effect of the NCC Board's March 5, 2009 vote granting Heneghan tenured statues remains a question of fact, I will deny defendants' motion to dismiss Heneghan's complaint insofar as it alleges a violation of his procedural due process rights.  I will also deny defendants' motion to dismiss Heneghan's individual Section 1983

discrimination claim against Bugaighis.  However, I will grant the motion to dismiss Heneghan's gender discrimination and punitive damages claims against NCC, gender discrimination and punitive damages claim against Whitaker, and punitive damages claim against Bugaighis.  I will also grant the motion to dismiss Heneghan's First Amendment claim.  I have liberally construed Heneghan's amended complaint and find that the factual allegations therein do not support assertion of the dismissed claims.  Therefore, to the extent defendants' motion to dismiss is granted, Heneghan is denied leave to amend his complaint.  An appropriate order follows.