## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONALD HENEGHAN,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| **v.** | : | |
| | : | **NO. 09-04979** |
| | : | |
| **NORTHAMPTON COMMUNITY** | : | |
| **COLLEGE, et al,** | : | |
| **Defendants** | : | |

**Stengel, J.**                                                                           **August  1, 2011**

Ronald Heneghan has filed a motion for reconsideration of this court's July 11, 2011

memorandum and order granting defendants' motion for summary judgment.  He claims this

Court improperly failed to consider relevant precedent set forth in McDaniels v. Flick, 59 F.3d

446 (3d Cir. 1995).  Because McDaniels does not support Mr. Heneghan's contention that there

is a genuine dispute whether his procedural due process rights were violated, his motion for

reconsideration will be denied.


## I.      RELEVANT BACKGROUND

Mr. Heneghan was a professor at Northampton Community College ("the College") who

was granted tenure by the Board of Trustees only to have that decision revoked before it could

take effect.  Because the facts are set forth in detail in this Court's memorandum and order

granting the motion for summary judgment filed by the College and its Dean of Humanities and

Social Sciences, Elizabeth Bugaighis, I will repeat only those facts relevant to the instant

motion.[1]  Mr. Heneghan seeks reconsideration of this Court's ruling only insofar as it granted

summary judgment in the College's favor on his procedural due process claim.

For purposes of the arguments raised in the motion for reconsideration, it bears repeating

that Mr. Heneghan's case is indeed unique: instead of being denied tenure, or being fired at some

point during his career as a tenured employee, Mr. Heneghan was initially granted tenure by the

Board of Trustees in February of 2009 only to have this decision quickly revoked after

allegations surfaced that he had engaged in inappropriate conduct with students and behaved

rudely to his colleagues.  This, as admitted by College officials, had never happened before at the

College.  After Mr. Heneghan first received notice in March of 2009 that his tenure appointment

had been rescinded, he filed a notice of appeal citing Article IV ¶ C of the Collective Bargaining

Agreement ("CBA") entered into between the College and the American Federation of Teachers

("the Union"), the union of which he was a member.  Under Article IV ¶ C, faculty members

who are denied tenure after teaching for six years at the College are entitled to appeal that denial

before the College's Board of Trustees.  Mr. Heneghan didn't *quite* fall into this category, since

after six years of teaching he had actually briefly been granted tenure before the decision was

rescinded.  He was granted an appeal, and he appeared for a hearing before the Board of Trustees

on May 7, 2009, where he implored its members not to rescind his tenure appointment.  They

rescinded it nonetheless.

Mr. Heneghan was accompanied to the hearing by Shelly Snyder, a Union representative.

He stated that his conversations with her gave him the impression that after the Board denied his

appeal, he had no further recourse.  Heneghan Dep. Session 1, 125:24-126:4.  She allegedly told

him that appeal to the Board of Trustees under Article IV ¶ C was his "only avenue" for appeal

---

[1]  See Memorandum at 1-6, Heneghan v. Northampton Community College, et al, 09-4979 (E.D.Pa. filed July 11, 2011) ("Memorandum").

of the rescission.  Id. at 126: 2-4.  Indeed, Ms. Snyder testified that she thought appeal to the

Board had been the proper route for Mr. Heneghan to take.  Snyder Dep. 24:14-16 ("I thought

that the contract language under Article 4 ¶ C was pretty clear as to what his status was as an

employee with the Community College.").

      However, in the CBA, there is another section under which College employees may file

grievances about College actions.  This section, which appears at Article XIV of the CBA,

provides that "a grievance is a complaint arising out of the interpretation, application, or

violation of one or more of the express provisions of this Agreement."  CBA Article XIV ¶ A(1).

Under this Article, a grievant shall "present a grievance at the lowest administrative level having

authority to dispose of the grievance within fifteen (15) College days after the occurrence or

condition giving rise to the grievance[.]"  CBA Art. XIV, ¶ D.  The College's administrative

representative has fifteen days to submit a written response to the grievant, and if the employee's

grievance is not resolved by the response, the grievant may appeal to the President of the

College.  Id.  Following appeal to the President, the grievant, may, through the Union, submit the

matter to arbitration.  Id.

      Mr. Heneghan learned on May 10, 2009 that the Board had voted not to reinstate his

tenure.  On May 13, 2009, despite his claimed belief that he had no further recourse to appeal its

decision, he filed a Union grievance under procedures set forth in the CBA.  He used the

College's official grievance report form.  Ex. 8 to Def.'s Motion for Summary J.  He sought a

grant of tenure and a ruling that he could "continue in his current position as Associate Professor

of Communications/Theatre."  Id.  Mr. Heneghan's grievance was denied by Helene Whitaker,

the College's Vice-President of Administrative Affairs, on the same day he filed it.  Id.  The

form itself contains a further section to be filled out as the grievant proceeds to step two of the

process, appeal to the President or a designee.  There is no record that Mr. Heneghan proceeded

to the second step, or that he submitted the matter to arbitration under the third step.  Mr.

Heneghan testified that the decision not to proceed to the second step was made by the Union.

Its decision was communicated to him by Mario Acerra, who told Mr. Heneghan in an email that

the executive committee had done an investigation of his case and decided not to proceed.

Heneghan Dep. Session 1, 168:15, 169:2-6.  Mr. Heneghan stated that Mr. Acerra gave him the

opportunity to call and ask questions, but that he did not do so and did not ask anyone else from

the Union why it had not appealed the initial grievance denial.  See id. at 169:170:23.

For her part, Ms. Whitaker explained that she, as a representative of the College, denied

Mr. Heneghan's initial grievance because she believed that his situation fell under the proscribed

procedures for a faculty member who is denied tenure.  See Whitaker Dep. 30:4-21.  She

understood that grievance procedures applied to professors terminated from their employment

with the College.  See id.


## II.    STANDARD FOR A MOTION FOR RECONSIDERATION

"The purpose of a motion for reconsideration is 'to correct manifest errors of law or fact

or to present newly discovered evidence.'"  Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir.

2010) (quoting Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)).  A court

should grant a motion for reconsideration "if the party seeking reconsideration shows at least one

of the following grounds: (1) an intervening change in the controlling law; (2) the availability of

new evidence that was not available when the court granted the motion . . .; or (3) the need to

correct a clear error of law or fact or to prevent manifest injustice."  Max's Seafood Café, 176

F.3d at 677 (quoting N. River Ins. Co. v. Cigna Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).

III.     DISCUSSION

In its initial summary judgment opinion, this Court identified the proper standard for review of Mr. Heneghan's claim as the one set forth in Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985).  Memorandum at 10-12.  Loudermill establishes that, if a public employee has a legitimate interest in continued employment (and this Court found that Mr. Heneghan did), he is entitled to oral or written notice of the charges against him, an explanation of the evidence, and an opportunity to present his side of the story before his employment is terminated.  Mr. Heneghan argued in his opposition to the College's motion for summary judgment that, as part of his procedural due process protections, he was instead entitled to a *pre-deprivation* formal hearing before a neutral hearing officer.  Pl.'s Resp. to Def.'s Motion for Summ. J., 7 ("[T]he only issue is whether there was an adequate pre-deprivation hearing. Here, there was not, since a hearing before a neutral hearing officer was required, and none was provided.").  He cited one case, Schweiker v. McClure, 456 U.S. 188 (1982), for this proposition.

In the instant motion, Mr. Heneghan cites a new case and fundamentally alters his argument: he now insists, relying on McDaniels, that "since the pre-deprivation process was not impartial . . . the only way for Defendants to escape liability is if the Court is correct that Plaintiff had available a *post-deprivation* remedy in the union grievance process."  Pl.'s Mem. in Support of Mot. For Reconsideration, 3 (emphasis added).  In other words, where in his initial briefing Mr. Heneghan claimed that his pre-deprivation procedures were inadequate, he now claims his post-deprivation procedures were lacking.

McDaniels involved the discharge of a tenured professor, Frank McDaniels, from the Delaware County Community College ("DCCC"). Following a trial in which the jury found against DCCC and awarded McDaniels substantial damages for violation of his procedural due process rights, DCCC filed a motion for judgment as a matter of law in its favor. The District Court denied the motion and the Third Circuit reversed. After school officials initiated an investigation into charges that he had threatened and sexually harassed a student, McDaniels was afforded a pre-termination hearing during which a school official explained the charges against him and allowed him to respond. Id. at 451-52. Subsequently, McDaniels was terminated from his position and told of his post-termination rights, which included having his action heard through a grievance procedure as provided under the terms of his union's collective bargaining agreement, or having a hearing before a committee of the College's board of trustees. Id. at 452. He appealed to the President of the College, but did not appeal the President's adverse decision to the board. Id. at 453. He did not pursue the matter in state court. Id. Rather, he began arbitration proceedings as provided under the collective bargaining agreement and then filed a federal action while they were pending. Id.

The Third Circuit re-affirmed that Loudermill provides the proper standard to assess the adequacy of pre-termination procedures afforded to a public employee. McDaniels, 59 F.3d at 456. It then addressed McDaniels' argument that he should have been allowed to present evidence at trial that the pre-termination procedures he was afforded were "a sham" because the officials who conducted his initial interviews were not impartial. Id. at 458-59. The court ultimately rejected this argument. First, it observed that there is a key distinction between pre- and post-termination procedures in public employment cases:

> Although due process requires an impartial decisionmaker before final deprivation of a property interest, [Schweiker, 456 U.S. at 195], it is not

> clear that strict impartiality is required at each stage of the process. In
> situations as the one at hand, there are two stages, pretermination and
> post-termination, but normally the post-termination proceedings
> conclusively determine the employee's status. The pretermination
> hearing merely serves as 'an initial check against mistaken decisions -
> essentially, a determination of whether there are reasonable grounds to
> believe that the charges against the employee are true and support the
> proposed action.'

Id. at 459.  The Court went on to observe that failure to provide an impartial decisionmaker in

the pre-termination context does not in itself constitute a due process violation where the plaintiff

has recourse to neutral, post-termination review.  It stated:

> [A] discharged employee cannot claim in federal court that he has been
> denied due process because his pretermination hearing was held by a
> biased individual where he has not taken advantage of his right to a post-
> deprivation hearing before an impartial tribunal that can rectify any
> possible wrong committed by the initial decisionmaker.

Id. at 460.

That leads to Mr. Heneghan's argument.  He claims that since his pre-deprivation

procedures were not impartial, "the only way for Defendants to escape liability is if the Court is

correct that Plaintiff had available a post-deprivation remedy in the union grievance process."

Pl.'s Mem. in Support of Motion for Reconsideration, 3.  He essentially argues that, since both

Ms. Snyder and Ms. Whitaker were under the impression that Mr. Heneghan's appeal of the

rescission of tenure was complete following his hearing before the Board of Trustees, he did not

have an adequate post-deprivation remedy available through the Union grievance process.

His argument fails.  First, Mr. Heneghan bases his claim that the grievance process was

unavailable to him on the fact that Ms. Whitaker and Ms. Snyder thought his appeal had ended

with his hearing before the Board.  With respect to Ms. Whitaker, her subjective belief about the

procedures available to Mr. Heneghan does not have any effect on whether he could have

pursued the grievance process.  She was the person who denied his initial grievance; but had he

proceeded to the next step, appeal to the President, she would have had no part in a denial at that

stage.  Neither could she have prevented him from pursuing arbitration through the Union.  With

respect to Ms. Snyder's representations to Mr. Heneghan, she made clear in her deposition that

though her involvement in his case ended after his appeal before the Board of Trustees, he did in

fact file a grievance with the assistance of other Union officials.

> Q:      . . . Would you agree with me that it would have been more beneficial to have considered him to have had the right to grieve versus the right to appeal to the board?
>
> A:      Well, in fact, he did grieve.  There was a grievance that was filed on his behalf.
>
> Q:      And what happened with the grievance?
>
> A:      It did not proceed after the decision that the board of directors made and that was a decision that was made by the executive committee of the local.
>
> Q:      Okay.  Just so I understand this, someone actually filed a grievance under the grievance provisions of the collective bargaining agreement?
>
> A:      Yes.
>
> Q:      Who did that?
>
> A:      I assume then that that was the local's job to do.  This was not something that I did.
>
> Q:      How do you know they actually did that?
>
> A:      I think I saw a copy of it.
>
> Q:      Okay.  And that was the - - on a form that was provided for grievances?
>
> A:      Yes.
>
> Q:      It was eventually denied by an administrator?
>
> A:      By Helene Whitaker.
>
> Q:      Now, what it your understanding that the appeal procedure that you were involved in that resulted in the May board hearing was an appeal of the denial of that grievance of the appeal of something else?
>
> A:      I believe that Article 4, Section C was the appeal process that was required of Mr. Heneghan if he wanted to go before the board.
>
> Q:      Okay.  So did that have anything to do with the grievance that was denied by Helene Whitaker or do you think that was a separate process?
>
> A:      It was - - to me it was a separate process.
>            . . .
>
> Q:      What was your understanding about what could be done about Helene Whitaker's denial of that grievance?

> A:    Well, if, in fact - - and I would have to review their grievance procedure in the contract.  If Helene's denial was first step, then - - or second step, then there would had to have been a third step if the local wanted to proceed with it.

Snyder Dep. 24:17-26:12.

Mr. Heneghan urges the Court to ignore both his admission on summary judgment that he was a member of the Union (Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts, ¶ 2) and his apparent belief that he was entitled to file a grievance, as evidenced by the fact that he did so.  Mr. Heneghan was the person whose beliefs and actions mattered.  To repeat McDaniels: "a discharged employee cannot claim in federal court that he has been denied due process because his pretermination hearing was held by a biased individual *where he has not taken advantage of his right to a post-deprivation hearing before an impartial tribunal that can rectify any possible wrong committed by the initial decisionmaker.*"  59 F.3d at 460 (emphasis added). The Third Circuit has more recently stated:

> [N]o due process violation occurs as a result of an adverse employment action as long as the government provides the employee with notice and an adequate opportunity to be heard after the fact. McDaniels, 59 F.3d at 459-60.  A public employer may discharge its due process obligations by providing for facially adequate post-deprivation grievance procedures, even if the initial determination resulting in the deprivation was biased. Grievance procedures provided in collective bargaining agreements may satisfy due process.  Dykes v. Se. Penn. Transp. Auth., 68 F.3d 1564, 1572 n. 6 (3d Cir. 1995).

Skrutski v. Marut, 288 Fed.Appx. 803, 808-809 (3d Cir. 2008) (some internal citations omitted).

Moreover, as pointed out by the College, there is no record evidence to support a claim that any College official took affirmative action to dissuade Mr. Heneghan from following the established grievance procedure.  Ms. Whitaker denied his first grievance, and the CBA clearly stated that a second and third step – appeal to the President, and then arbitration – followed the first.  Mr. Heneghan admitted that it was the Union that elected not to proceed to the second step,

9

and admitted that when Mr. Acerra communicated this decision to him, he told Mr. Heneghan to call him with any questions or concerns.  Mr. Heneghan testified that he did not contact Mr. Acerra or anyone else from the Union.  This Court stated on summary judgment that "when Mr. Heneghan filed a grievance . . . it was denied.  However, Mr. Heneghan did not proceed to the following two steps of the grievance process, which were presumably available to him.  He admits that the Union, which represented him, elected not to do so."  Memorandum at 15.  Mr. Heneghan has presented no evidence that this Court erred in finding that he could have, but did not, pursue the next two steps in the grievance process.  Because there is no dispute that arbitration would have constituted a hearing before an impartial decision-maker, Mr. Heneghan has failed to show that his motion should be granted due to error of fact or law.

Anticipating the College's argument that he could also have appealed his termination under Pennsylvania Local Agency Law,[2] Mr. Heneghan claims that, to the extent McDaniels found that appeal under Local Agency Law was available, it was wrongly decided.[3]  Mr. Heneghan argues that Local Agency Law does not apply because "the Pennsylvania Public Employee Relations Act ("PERA"), 43 P.S. § [1101.101], *et seq.* [], provides that arbitration of disputes is the *exclusive* remedy available to a unionized public employee."  Id. (emphasis in original).[4]

---

[2]  Pennsylvania Local Agency Law Section 752 provides that "a[]ny person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals[.]"  2 PA.C.S.A. § 752.  That court may hold a *de novo* hearing "[i]n the event a full and complete record of the proceedings before the local agency was not made."  2 PA.C.S.A. § 754.

[3]  McDaniels held that, because the parties stipulated that DCCC was a local agency subject to the provisions of Local Agency Law, it was clear that "the state offered [McDaniels] sufficient process to protect his property rights."  59 F.3d at 461.

[4]  In support of this assertion, Mr. Heneghan cites Borough of New Cumberland v. Police Emps. of the Borough of Cumberland, 414 A.2d 761 (Pa. Cmwlth. 1980), which concerned Section 4(a) of Act 111, a

There is no basis upon which to believe McDaniels was wrongly decided.  However,

even accepting Mr. Heneghan's argument that the PERA controls, his claim fails.  In Dykes, the

Third Circuit considered whether due process had been denied to a fired SEPTA bus driver who

availed himself of a three-step grievance procedure, following which his union did not carry the

matter to arbitration.  68 F.3d at 1571.  The court recognized that under the PERA, "federal labor

law governs a challenge to procedures followed in the termination of a public employee."  Id.

(citing Crilly v. Se. Penn. Transp. Auth., 529 F.2d 1355 (3d Cir. 1976)).  However, it then ruled

that the due process requirement of a post-deprivation hearing is satisfied whether the union

proceeds to arbitration or not, since an employee dissatisfied with the way the grievance

procedure was handled still has recourse in state court:

> If a public employee believes that the grievance process was defective,
> he may seek relief available under state law. Once an employee
> establishes that a 'union has acted in bad faith towards its member[,] . . .
> the Court of Common Pleas sitting in equity may order completion of the
> arbitration procedure. . . . Under this procedure a wrongfully discharged
> employee receives precisely the treatment all the employees in the unit
> are entitled to under the collective bargaining agreement.'  Where a due
> process claim is raised against a public employer, and grievance and
> arbitration procedures are in place, we have held that those procedures
> satisfy due process requirements even if the hearing conducted by the
> Employer . . . [was] inherently biased.'

Id. (citing Martino v. Transp. Workers Union of Phila., Local 234, 505 Pa. 391, 409-410, 480

A.2d 242 (1984) and Jackson v. Temple Univ., 721 F.2d 931, 933 (3d Cir.1983)).

Mr. Heneghan has failed to establish that grievance procedures were unavailable to him.

Moreover, he had remedies to voice any dissatisfaction he had with the Union's handling of the

process.  The Third Circuit has recognized that if an employee believes a union has wrongly

---

Pennsylvania statute that applies solely to disputes between public employers and police or firemen.  See
43 P.S. § 217.4(a).  Therefore, it is no help in considering what effect, if any, the PERA has on his claim.

handled the grievance procedure, he can move to compel arbitration and thus pursue his rights under a CBA.  This, too, was a state court option available to Mr. Heneghan.


**IV.   CONCLUSION**

Mr. Heneghan received adequate pre-deprivation procedures under <u>Loudermill</u> because he was notified of the nature of the charges against him and given the opportunity to meet with school officials to explain his side of the story.  Because adequate post-deprivation procedures were available to him, and he simply failed to take advantage of them, his case falls under the ruling in <u>McDaniels</u>.  His motion for reconsideration will be denied.  An appropriate order follows.